**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:20-cv-00603-DDD

BOBBI K HENDERSON,

   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

---

**ORDER AFFIRMING DECISION OF
ADMINISTRATIVE LAW JUDGE**

---

On October 3, 2016, Plaintiff Bobbi Henderson filed a claim for disability benefits with the Commissioner of Social Security, the Defendant in this case. On January 3, 2019, applying the five-step sequential framework that governs disability-benefit claims, *see* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted), an Administrative Law Judge (ALJ) found that Ms. Henderson had Post Traumatic Stress Disorder resulting from an assault in 2009. (AR at 124.[1]) But, considering the entirety of the evidence before him concerning Ms. Henderson's condition, the ALJ determined that Ms. Henderson's PTSD was not disabling within the meaning of the Social Security Act and that Ms. Henderson could perform work that

---

[1] "AR" refers to the Administrative Record in this matter, which is docket dumber 13, and the attachments thereto.

1

exists in significant numbers in the national economy. (*Id.* at 130.) The Appeals Council declined to review the ALJ's decision, and Ms. Henderson's appeal of the decision is currently before the Court. (*See* Docs. 16, 17, 18.) Ms. Henderson argues that the Commissioner made four reversible errors. The Court disagrees for the reasons explained below.

### I.     The Medical Opinions of Jessica Sands and Malgorzata Gawron

Ms. Henderson first argues that the ALJ erred when he accorded little weight to the opinions of two of Ms. Henderson's care providers: Jessica Sands, a Licensed Professional Counselor; and Malgorzata Gawron, a Nurse Practitioner. Ms. Gawron and Ms. Sands completed two medical source statements for Ms. Henderson's application for social security benefits. (AR at 1112–1116, 1971.) In their first medical source statement completed on February 16, 2017, Ms. Garwon and Ms. Sands opined that Ms. Henderson "experiences symptoms congruent with" PTSD and that "she experiences debilitating anxiety that prevent" regular sleep patterns and leaving her home. (*Id.* at 1113.) Ms. Garwon and Ms. Sands noted that their observations were based on care that began in January 2015. (*Id.* at 1113, 1116.) Ms. Sands completed a second medical source statement on November 5, 2018. She opined that Ms. Henderson has "debilitating anxiety that created a significant barrier to completing daily tasks." (*Id.* at 1971.) Ms. Sands noted that her opinion was based on a treatment period of January 23, 2015 through March 7, 2017. (*Id.*) The ALJ reviewed this evidence in detail, but gave it little weight for two reasons: it didn't concern the relevant time period for determining entitlement to benefits, 2009 to 2014; and neither Ms. Sands nor Ms. Garwon were acceptable medical sources "who can provide evidence to establish an impairment" under the regulations in effect at the

time Ms. Henderson filed her claim, 20 C.F.R. § 404.1513(a) (2016). (AR at 128.)

The ALJ's decision to discount Ms. Sands and Ms. Garwon's opinions wasn't error. The ALJ was correct that the dispositive question is whether Ms. Sands was disabled *before* the expiration of her insured status, which occurred in December 2014. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007) ("Claimant must establish onset of disability prior to date insured status expired." (citing *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360 (10th Cir. 1993)); *see also Cobb v. Colvin*, 175 F. Supp. 3d 1227, 1234 (D. Colo. 2016) (same); 20 C.F.R. § 404.131(a) (same). Neither Ms. Garwon nor Ms. Sands cared for Ms. Henderson before that date, so their opinions aren't probative of whether Ms. Henderson could return to work before her insured status expired. Ms. Henderson points out that the first medical source statement noted that she reported that her problems began in 2009. (*See* AR at 1115.) But neither Ms. Sands nor Ms. Garwon observed Ms. Henderson at that time. Indeed, Ms. Sands made clear that the "earliest dates the limitations . . . have been present" for purposes of her opinions was January 23, 2015. (*Id.* at 1971.) Because Ms. Sands and Ms. Gawron did not observe Ms. Henderson during the relevant time period, the ALJ's decision to disregard their post-dated opinions wasn't error.

Even if they had provided relevant evidence, however, the ALJ was also right that neither Ms. Gawron nor Ms. Sands were acceptable medical sources under the regulations in effect at the time Ms. Henderson filed her application for benefits.[2] 20 C.F.R. § 404.1513(a)(2016) listed

---

[2] The Commissioner significantly revised the regulations governing applications for disability benefits in 2017. However, those revisions only apply to applications filed on or after March 27, 2017, whereas Ms. Henderson filed her application in 2016. *See Balliett v. Berryhill*, No.

3

neither nurse practitioners nor licensed professional counselors as acceptable medical sources "who can provide evidence to establish an impairment." Subsection (d) of that regulation makes clear, moreover, that it is a purely discretionary decision of the Commissioner whether to weigh evidence of other medical sources such as nurse practitioners. *See id.* § 404.1513(d) (2016) (an ALJ is permitted but not required to consider evidence from other medical sources).[3] The ALJ thus did not err in rejecting this evidence.

## II. The Medical Opinions of Deborah Williams

Ms. Henderson next argues that the ALJ's treatment of the opinion of Deborah Williams, a licensed professional counselor, was reversible error. Ms. Williams treated Ms. Henderson from September 2010 until August 2012. (AR at 373.) Ms. Williams noted that Ms. Henderson experienced significant symptoms related to her PTSD—difficulty eating,

---

1:17-CV-00149, 2018 WL 5259613, at *1 n.1 (D. Utah May 8, 2018) (citing *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (final rules)), *report and recommendation adopted,* No. 117CV00149RJSDBP, 2018 WL 4405617 (D. Utah Sept. 17, 2018). Ms. Henderson's arguments based on the current regulations thus have no relevance to her appeal.

[3] Ms. Henderson argues that the current version of 20 C.F.R. § 404.1527(f)(1) (2021) required the ALJ to weigh the opinions of non-acceptable medical sources. But as explained in the previous footnote, the regulations currently in effect do not apply to Ms. Henderson's application for benefits because she filed her application before their effective date. Yet even if the current version of § 404.1527 did apply, it's far from clear that that provision requires a different result. By its own terms, the rule makes clear that "not every fact for weighing opinion evidence will apply in every case." *Id.* And the next subsection merely says that the ALJ "should explain the weight given to opinions" from non-acceptable sources—"generally." *Id.* § 404.1527(f)(2). And the ALJ did in fact weigh the opinion evidence from Ms. Garwon and Ms. Sands and explained the weight given to them. But as explained above, the ALJ determined that their opinions deserved little weight because they did not concern the relevant time period.

sleeping, constant worry—and that her symptoms were making "it difficult for her" to handle "a high stress job." (*Id.*) The ALJ considered this opinion but gave it little weight because the determination whether a claimant can work is left to the Commissioner alone. (*Id.* at 127.) Ms. Henderson argues that this constituted reversible error because it wasn't simply a conclusion that Ms. Henderson was unable to work.

The ALJ was correct that he didn't have to credit Ms. Williams' testimony concerning Ms. Henderson's difficulty working. *See* 20 C.F.R. § 404.1527(d)(1) (2016) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.'"). Ms. Henderson argues that Ms. Williams's opinion did more than merely say she was unable to work but instead concerned Ms. Henderson's ability to withstand workplace stress. True, but as the Commissioner correctly points out, the ALJ ultimately determined that Ms. Henderson wasn't capable of returning to her high-stress job. The ALJ instead determined that Ms. Henderson was capable of "simple" non-stressful work. (AR at 130.) Ms. Williams's opinion that Ms. Henderson isn't capable of performing a high-stress job is thus consistent with the ALJ's ultimate determination.[4]

### III.     The Appeals Council

Ms. Henderson's third argument is that the Appeals Council erred when it refused to consider new evidence, specifically the clinical notes of Ms. Williams, that weren't made available to the ALJ. Under the relevant regulations governing Appeals Council review, "the Appeals Council will review a case if . . . the Appeals Council receives additional

---

[4]  Ms. Williams was also not an acceptable medical source for the reasons explained above. The ALJ was not required to credit her opinions as a result.

5

evidence that is new, material, and relates to the period on our before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5)(2020).[5]

The fundamental problem with Ms. Henderson's argument is that the Appeals Council *did review* Ms. Williams notes, determining that they wouldn't change the outcome:

> You also submitted treatment records from Deborah Williams, M.A., L.P.C., dated September 16, 2010 to August 2, 2012 (89 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

(AR at 7.) Ms. Henderson implies that the Appeals Council's weighing of this new evidence was inadequate, but the Tenth Circuit has explained that a court must "take a lower tribunal at its word when it declares it has considered a matter." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). And the limited scope of this Court's review of decisions of the Commissioner means that the Court should nor, and will not, reweigh the evidence. *Id.*

---

[5] Ms. Henderson relies solely on the current regulations in crafting her argument to the Court. Yet even if the older regulations in effect at the time she filed her claim govern her appeal, those regulations don't materially differ from those currently in effect for purposes of this case. *See* 20 C.F.R. § 404.970(b) (2016) (Appeals Council must determine whether "new and material evidence" renders ALJ's decision contrary to the weight of evidence); *see also Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) ("Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.").

### IV.   Consistency of Ms. Henderson's Statements

Ms. Henderson's final argument is that the ALJ erred in finding that her testimony about her symptoms wasn't entirely consistent with the objective medical evidence. (*See* AR at 124.) In making this determination, the ALJ first gave a detailed summary of Ms. Henderson's testimony and the consistency in her reporting of her symptoms. (*Id.*) The ALJ noted that, after her assault in 2009, Ms. Henderson "became very anxious, distracted, and was not sleeping." (*Id.*) The ALJ explained, however, that Ms. Henderson's symptoms didn't entirely align with the objective medical evidence. (*Id.*) Among other things, the ALJ noted medical evidence that Ms. Henderson began getting better sleep four months after the symptoms began, and that her primary care physician reported that in 2011 Ms. Henderson "appeared well of in no apparent distress, alert, oriented, pleasant, [] cooperative, with no indication that the claimant had difficulty understanding issues, remembering, or concentrating during her medical appointments." (*Id.* at 125.)

Ms. Henderson argues that the ALJ failed to account for the factors in 20 C.F.R. § 404.1529(c)(3) and thus his decision to discount her testimony was legal error. But all that § 404.1529(c)(3) requires is the ALJ to "carefully consider any other information you may submit about your symptoms," including, among other things, how those symptoms affect activities of daily living.  The ALJ did precisely that, but nevertheless found that the objective medical evidence outweighed Ms. Henderson's testimony about her symptoms. An ALJ's ruling need be supported only by substantial evidence—less than a preponderance, more than a scintilla—to survive a challenge on appeal. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The ALJ's decision regarding Ms. Henderson's personal observations was so supported and thus was not reversible on appeal or by this Court.

7

## CONCLUSION

The decision of the ALJ is **AFFIRMED**.

DATED: April 26, 2021.   BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

8